IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-1150-RBJ
_____

SARAH REITER

      Plaintiff,

v.

THE CLASSICAL ACADEMY, A COLORADO CHARTER SCHOOL

      Defendant.
_____

## MOTION FOR SUMMARY JUDGMENT
_____

Defendant **The Classical Academy ("TCA")**, by and by and through its attorneys, hereby submits its Motion for Summary Judgment pursuant to F.R.C.P. 56, and, in support, states as follows:

### CERTIFICATE OF CONFERRAL

Undersigned counsel conferred with Plaintiff's counsel regarding this motion by e-mail and telephone. Plaintiff opposes the relief sought.

Counsel also conferred by phone on the potential conflict between our Scheduling Order [Doc. #10 and 10-1, dated August 12, 2020] and the later-adopted Practice Standards [revised December 8, 2020] related to the notice of intent process prior to filing for summary judgment. The Practice Standards [revised December 1, 2019] in effect at the time our Scheduling Order was entered stated that the Court would "set a date by which a party may file a notice of intent to file for summary judgment and a date for a response." These dates were not included in our Scheduling Order, and only the deadline for the motion for summary judgment was set. As such,

it was Defendant's belief that the notice of intent was not required and did not calendar deadlines for this process. Defendant understands, however, that this Court's new Practice Standards has different language that the notice of intent letter is to be filed 21-days prior to any dispositive motion. Defendant did not realize the discrepancy until just recently (well within the 21-day window), but believes that the Scheduling Order based on the previous Practice Standards in effect at the time should control here such that the notice of intent process was not required. In our phone call, counsel for the parties did confer about the possibility of requesting to push out the dispositive motions deadline to allow the letter of intent process, but the timing of our current trial date (the last week of September, 2021) could create potential issues for all parties and the Court if we did so. Given the discrepancy between our Scheduling Order and the new Practice Standards, Defendant believes that to the extent this Court disagrees that the Scheduling Order controls, good cause exists to deviate from the notice of intent process here. Plaintiff has not taken a position on this issue at this time.

## MOTION

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

This matter arises from the non-renewal of Plaintiff Sarah Reiter's position as Assistant Principal of North Elementary, which is a campus of The Classical Academy. Ms. Reiter's sole claim against TCA is for retaliation under § 504 of the Rehabilitation Act. This Court should dismiss Plaintiff's claim because Plaintiff is unable to demonstrate a genuine factual dispute about whether the reason for her termination was pretextual.

**II.   UNDISPUTED FACTS**

The following material facts are undisputed for purposes of this motion for summary judgment:

1. The Classical Academy is a Colorado public charter school. *Compl*. at ¶ 4.

2. Sarah Reiter was hired by TCA as the Assistant Principal of North Elementary for the 2017-2018 school year. *Compl.* at ¶ 14. This was her first time working for a charter school and her first time working as an assistant principal. *Depo. of Don Stump* at 9:10-13 (**Exhibit A**); *Depo of Wesley Jolly* at 18:14-17 (**Exhibit B**).

3. Wesley Jolly is TCA's Director of Academic Services for TCA, and he was the sole decision maker in whether to renew Ms. Reiter for the next school year. *TCA's Resp. to Interrog. No. 2* (**Exhibit C**).

4. Throughout her tenure at TCA, Ms. Reiter was critical of TCA's curriculum choices, whole classroom instruction, and philosophical approach to education. Ms. Reiter expressed her disapproval to many in leadership with TCA including to Wesley Jolly and Don Stump. *Stump* at 14:18-15:1, 19:7-20:8 (Ex. A); *TCA Resp. to Interrog. No. 1* (Ex. C); *Jolly* at 58:9-63:13, 65:11-15 (Ex. B).

5. On about September 11, 2017, Ms. Reiter made derogatory comments to the 5th grade teaching team that required intervention by senior administration. *TCA Resp. to Interrog. No. 1* (Ex. C); *Depo. of Sarah Reiter* at 19:2-17 (**Exhibit D**).

6. In January, 2018, Ms. Reiter had negative interactions with HR staff that required intervention. *TCA Resp. to Interrog. No. 1* (Ex. C).

7. Ms. Reiter was critical of the fact that many teachers at TCA were not licensed as teachers were in "traditional" public schools. *Jolly (Ex. B)* at 62:10-63:13. Ms. Reiter expressed her criticism of teachers' qualifications to Mr. Jolly and others at TCA. *Id.*; *Depo of Jodean Peterson* at 50:4-11 (**Exhibit E**). Ms. Reiter and Mr. Jolly discussed her concerns about teacher qualifications in January, 2018. *Jolly* at 62:10-63:13 (Ex. B).

8. Ms. Reiter was looking for and interviewing for other jobs during the winter and early spring of 2018. *Reiter* at 79:25-80:17 (Ex. D). She obtained a recommendation letter from her principal, Don Stump, dated March 23, 2018, to obtain other employment. *Reiter* at 111:17-112:18 (Ex. D).

9. In April, 2018, although she was in charge of administering testing at North, she was not on campus during one of the state testing administrations because she was interviewing for another job. *Reiter* at 113:10-114:3 (Ex. D). Mr. Jolly believed that her absence led to multiple mis-administrations of the exam. *TCA Resp. to Interrog. No. 1* (Ex. C).

10. Ms. Reiter alleges two protected activities here involving students with disabilities. The first related to student A.K. where Ms. Reiter raised concerns about discipline methods with staff at TCA. *Compl*. at ¶¶ 16-45, 60-64. The second involved student G.C. where Ms. Reiter questioned whether students could be videotaped for behavioral concerns. *Compl*. ¶¶ 46-58, 66-68, 71-76. (collectively "Concerns")

11. Ms. Reiter's "Concerns" were not the reason for her termination. Mr. Jolly had no knowledge of any of Ms. Reiter's concerns about A.K. *Reiter* at 118:3-120:9 (Ex. D). Other employees, including Mr. Stump agreed with Ms. Reiter's concerns about A.K.'s discipline. *Depo of Cheryl Birkey* at 8:17-9:15 (**Exhibit F**).

12. Mr. Jolly did not know that the concerns about videotaping students were in regard to G.C. *Jolly* at 80:19-84:19 (Ex. B). Other employees, including Mr. Jolly, agreed that videotaping students without parental consent was improper and agreed fully with the preparation of guidelines to remind leadership at TCA to this effect. *Id.* (Ex. B); *Birkey* at 32:4-33:23 (Ex. F); *Depo of Jenny Divitto* at 30:24-31:12 (**Exhibit G**). The Director of Student Support Services (i.e. special education),  Jenny Combs (n/k/a Jenny Divitto), and TCA's head of

4

Compliance, Cheryl Birkey, also fully agreed with Ms. Reiter that videotaping students such as G.C. was inappropriate and immediately acted to address the situation by preparing guidelines for TCA leadership. *Id*. There is no evidence that anyone at TCA who became aware of the videotaping issue disagreed with Ms. Reiter's concern.

   13.   Jodean "Jody" Peterson had been an assistant principal of another campus of TCA and was to be the incoming principal of North Elementary for the 2018-2019 schoolyear following the retirement of North's current principal, Don Stump. *Compl*. ¶¶ 32, 69.

   14.   On approximately April 24, 2018, Ms. Reiter had a conversation with Ms. Peterson where Ms. Peterson requested that Ms. Reiter commit to work with her as a team at North for the next few years to get North back on track. *Reiter* at 80:25-81:8 (Ex. D); *Peterson* at 93:4-94:23 (Ex. E). Ms. Reiter would not agree to work with her. *Id*. Ms. Peterson reported multiple red flags with Mr. Jolly about this conversation she had with Ms. Reiter. *Peterson* at 60:4-8, 64:1-11 (Ex. E). Ms. Peterson provided Mr. Jolly a written memorandum detailing her concerns on April 25, 2018. *Peterson* at 64:12-24 (Ex. E).

   15.   Ms. Peterson reported to Mr. Jolly that Ms. Reiter had made disparaging remarks about Mr. Stump in from of District leaders at a meeting by referring to him as a "little old man." *Jolly* at 118:17-25 (Ex. B).

   16.   On April 26, 2018, Mr. Jolly informed Ms. Reiter that TCA would not be asking her to return for the 2018-2019 schoolyear. *Compl.* at ¶ 77.

   17.   Mr. Jolly has stated that his reason to not renew Ms. Reiter was a culmination of the events detailed in paragraphs 4-9 and 14-15 above. *Jolly* at 114:2-115:22 (Ex. B), 119:11-22; *TCA Resp. to Interrog. No. 1* (Ex. C). Mr. Jolly and TCA denies that Mr. Jolly's decision was in anyway related to Ms. Reiter's actions related to G.C. or A.K. *Answer* at ¶¶ 93-95 [Doc. 6].

### III. ARGUMENT

Ms. Reiter's sole claim is retaliation under § 504 of the Rehabilitation Act. *Compl.* ¶¶ 85-96. Section 504 of the Rehabilitation Act prohibits disability-based discrimination in federally funded programs. The section permits retaliation claims based on complaints made on behalf of individuals in such programs who have disabilities. The standard for retaliation claims under the Rehabilitation Act is the same as the standard for retaliation claims under the Americans with Disabilities Act (ADA). *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).

Specifically, Ms. Reiter must establish a prima facie case by showing: (1) that she engaged in protected activity; (2) that she suffered a materially adverse action by defendant either after or contemporaneous with her protected activity; and (3) a causal connection between the protected activity and the adverse action. *Id.* If Ms. Reiter makes a prima facie showing, TCA may then produce evidence of a legitimate, nonretaliatory reason for the adverse action. *Id.* If TCA does so, the burden of production shifts back to Ms. Reiter to show that the proffered reason is pretextual. *Id.* A causal connection may be established by producing evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. *Id.* at 1134, citation omitted.

A plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) *citing Morgan v. Hilti, Inc.*, 108

F.3d 1319, 1323 (10th Cir.1997). At the summary judgment stage, "the trier of fact may consider evidence establishing the prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual." *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1155 (10th Cir. 2008) (citations and internal quotation marks omitted). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. *Anderson, supra.*; *see also Buhrman v. Aureus Med. Grp.*, No. 19-CV-01544-RBJ, 2021 WL 516288, at *6 (D. Colo. Feb. 11, 2021).

Here, for purposes of summary judgment, we assume that A.K. and G.C. are "disabled" under applicable federal law. We will also assume for purposes of summary judgment that Ms. Reiter did engage in "protected activity" by asking questions about A.K.'s discipline methods and potential videotaping of G.C. Ms. Reiter's non-renewal also occurred after these activities, so for purposes of summary judgment, Defendant does not contest the second element of the prima facie case.

With respect to the causal connection element, Defendant disputes that Ms. Reiter can provide any evidence to support that a connection between the protected activity and her non-renewal since with respect to both children, Ms. Reiter's concerns were promptly addressed and all of the people she raised concerns with agreed with her. With respect to A.K., there is also no evidence that Mr. Jolly ever had any knowledge of any activities Ms. Reiter may have done on her behalf. Regardless, Defendant is aware that there is case law in the Tenth Circuit that indicates that timing alone is enough to defeat a motion for summary judgment with respect to the causal connection element. *See Anderson, supra*. As such, Defendant will assume for this motion only that Plaintiff can meet her prima facie showing to overcome summary judgment.

As detailed above, Defendant has asserted that it's legitimate, non-retaliatory reason for not renewing Ms. Reiter was due to multiple concerns about non-professional conduct, her inability to accept and implement the school's curriculum and philosophical approach, the fact that she was actively looking for other employment, and culminated in her statements to the incoming principal at North that she could not commit to work with her. Ms. Reiter cannot demonstrate any evidence that TCA's legitimate, non-retaliatory reasons for her non-renewal were mere pretext.

Ms. Reiter's conversation with Ms. Peterson occurred on April 24, 2018, and Ms. Peterson expressed her concerns to Mr. Jolly on both April 24 and April 25, 2018, including providing him with a detailed memorandum. Mr. Jolly had no knowledge of Ms. Reiter's concerns related to A.K., and he fully approved of her concerns about videotaping students, including endorsing a policy that he sent to leadership prohibiting such videotaping of students. The timing of Ms. Reiter's concerns about videotaping students was merely coincidental with the timing of Mr. Jolly's decision to not renew her for the next year.

## IV.   CONCLUSION

Ms. Reiter is required to offer enough evidence to create a genuine factual dispute about whether the reason for her termination was pretextual. Ms. Reiter has no evidence here to show that TCA's legitimate, non-retaliatory reason for not renewing her for the next school year was mere pretext. Instead, the undisputed facts show that Mr. Jolly was not aware of concerns about A.K., he fully agreed with Ms. Reiter about videotaping students, and that Ms. Reiter was refusing to agree to work with the person who would be her incoming boss, which Mr. Jolly learned about the day before he let Ms. Reiter know she would not be renewed. Ms. Reiter did not support TCA's curriculum choices or their philosophical approach to education. Ms. Reiter

8

also had disputes with both a 5th grade teaching team and HR. Ms. Reiter was also actively looking for new employment. Mr. Jolly knew about all of these additional actions and beliefs, and these were part of his consideration in not renewing her. Ms. Reiter's statement that she could not commit to work with her new boss was the final straw for Mr. Jolly.

As a result of these undisputed facts, Plaintiff's claim fails and should be dismissed.

WHEREFORE, Defendant respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's claim against TCA with prejudice.

DATED this 12th day of May 2021.

Respectfully submitted,

**OVERTURF McGATH & HULL, P.C.**

By  */s/ Lindsey W. Jay*
Lindsey W. Jay
Scott A. Neckers
Overturf McGath & Hull, P.C.
625 East Sixteenth Avenue, Suite 100
Denver, Colorado 80203
Tel: (303)860-2848
Fax: (303) 860-2869
lwj@omhlaw.com
san@omhlaw.com
*Attorneys for Defendant The Classical Academy*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on May 12, 2021, I electronically filed the foregoing **MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system and the Colorado Courts E-Filing to the following:

Ian D. Kalmanowitz
Cornish & Dell'Olio, P.C.
431 N. Cascade Avenue, Suite 1
Colorado Springs, CO 80903
Tel: (719) 475-1204
ikalmanowitz@cornishanddellolio.com
*Attorney for Plaintiff*

                                                              */s/Jessica Pringle*